## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

---

| | |
|---|---|
| PAUL SIPE, | Civil No. 07-1460 (JRT/FLN) |
| Plaintiff, | |
| v. | |
| FLEETWOOD MOTOR HOMES OF PENNSYLVANIA, INC., a Delaware corporation qualified to transact business in the State of Minnesota, and WORKHORSE CUSTOM CHASSIS, LLC, an Illinois limited liability company qualified to transact business in the State of Minnesota, | **MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| Defendants. | |

---

Todd E. Gadtke, **HAUER FARGIONE LOVE LANDY & McELLISTREM**, 5901 Cedar Lake Road South, Minneapolis, MN 55416-1549; Daniel J. Brennan, **BRENNAN LAW OFFICE**, 3541 45th Avenue South, Minneapolis, MN 55406, for plaintiff.

Mark R. Bradford, **BASSFORD REMELE, PA**, 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707, for defendant Fleetwood Motor Homes of Pennsylvania, Inc.

Melissa R. Stull and John D. Sear, **BOWMAN & BROOKE LLP**, 150 South Fifth Street, Suite 3000, Minneapolis, MN 55402, for defendant Workhorse Custom Chassis, LLC.

Plaintiff brought this action against defendants Fleetwood Motor Homes of Pennsylvania, Inc. ("Fleetwood") and Workhorse Custom Chassis, LLC ("Workhorse"), alleging breach of warranty under the Magnuson-Moss Warranty Act, revocation of acceptance, and violations of Minnesota's Lemon Law. This case is before the Court on

defendants' motions for summary judgment.  For the reasons discussed below, the Court grants defendants' motions.

## BACKGROUND[1]

On September 18, 2004, plaintiff purchased a Fleetwood Southwind 36B motor home from Brambillas, Inc. ("Brambillas"), a Minnesota RV dealer located in Shakopee, Minnesota.  Defendant Fleetwood manufactured the motor home.  Defendant Workhorse manufactured the motor home chassis.[2]  Plaintiff paid $105,616.75 for the motor home, which was delivered to plaintiff on October 21, 2004.  Plaintiff also received an Owner's Manual containing Fleetwood's Limited Warranty, as well as Workhorse's Limited Warranty covering the motor home's chassis.

Plaintiff alleges that the motor home and chassis suffer from various manufacturing defects, including (1) a bowed kitchen wall, (2) engine stalling issues, (3) paint overspray underneath one wheel well, (4) rust stains on the motor home's exterior fiberglass, (5) a missing mud flap, (6) a small dent in the exterior fiberglass, (7) a missing outside water heater door clip, (8) an exterior storage door that does not close easily, (9) problems with the rear leveling jacks, and (10) a transmission fluid leak.

With respect to the leveling jacks, plaintiff alleges that one of the motor home's rear leveling jacks does not retract completely.  According to plaintiff, the leveling jacks

---

[1] For purposes of this summary judgment motion, the Court considers the facts in a light most favorable to plaintiff as the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[2] The chassis refers to the motor home's supporting frame and running gear including the engine and transmission.

have undergone six separate repair attempts.   Each time, Brambillas cleaned and lubricated the leveling jacks and, on one occasion, performed some rewiring.   Following these repair attempts, Power Gear, the manufacturer of the leveling jacks, provided new springs at no cost to the plaintiff under the terms of a separate warranty.   Brambillas installed the new springs on August 10, 2006, at no cost to plaintiff.   Plaintiff has not experienced any problems with the leveling jacks since the new springs were installed. Plaintiff's expert, Tom Battenberg, stated in a report that he had inspected the operation of the jacks and found that the jacks now operated properly.   However, Battenberg also stated that Brambillas failed to take appropriate steps to accurately diagnose and repair the jack problem, and that repair of the jacks should have been accomplished in one or two attempts.

With respect to the motor home chassis, plaintiff alleges that the Workhorse engine has stalled on three separate occasions, each time while plaintiff was driving in traffic.   After the first such incident, plaintiff brought the motor home to Brambillas.   On October 28, 2004, Brambillas service personnel conducted a computer scan of the engine to try to identify the problem.   The reviewing technician found no problems with the engine, and wrote on the work order "RAN TECH SCAN – NO DIAG. TROUBLE CODE STORED OR CURRENT."   According to plaintiff, he brought the motor home back to Brambillas for inspection and repair of the engine problem on two additional occasions.   Plaintiff concedes that he has not discussed the engine problem directly with Workhorse and did not provide Workhorse with any written notification regarding the problem prior to filing this lawsuit.

According to plaintiff, the last time the engine stalled was in June 2005.  Plaintiff stated in deposition testimony that the engine problem has not prevented him from taking trips in his motor home.  Plaintiff has taken at least nine trips since June 2005.  According to Workhorse, it has never refused to perform repairs or work covered under the limited warranty.

On August 7, 2007, Workhorse Regional Service Manager Rob Zulian test drove plaintiff's motor home.  The engine did not stall during this time.  Zulian also ran a diagnostic computer scan on the engine, which revealed no diagnostic codes related to an engine stalling problem.  Plaintiff's expert, Timothy Huttner, also inspected the motor home and ran a computer scan on the engine.  The scan revealed three codes.  None of the codes were related to an engine stalling condition.

Fleetwood representative Barry Krueckeberg also inspected each of the problems plaintiff identified with the Fleetwood motor home.  Krueckeberg observed that the kitchen wall was not bowed, that the motor home was equipped with an outdoor water heater door clip, and that the exterior storage doors opened and closed properly.  Krueckeberg did not observe any rust stains or paint overspray on the motor home, and determined that the leveling jacks functioned properly.  He did not observe any missing mudflaps or any denting in the exterior fiberglass.

In addition to the problems identified above, plaintiff alleges he discovered leaked transmission fluid under the motor home in January 2007.  Plaintiff reported the leak to a Brambillas service manager.  According to plaintiff, Brambillas service personnel examined and confirmed the leak but refused to attempt any repairs because plaintiff had

initiated this litigation.  Plaintiff then brought his motor home to Boyer Trucks in Savage, Minnesota.  Bill Hanson, a service technician at Boyer, found no problems with the transmission, and stated that the leaked transmission fluid was likely the result of a "cold leak," which occurs when a rubber gasket shrinks in cold weather and allows transmission fluid to escape.  Hanson stated that repair of the transmission was not necessary.

On at least two occasions prior to this litigation, plaintiff told the service manager at Brambillas, Thomas Weller, that he was unhappy with the motor home and with Brambillas's services.  Plaintiff told Weller that if Brambillas "did not resolve the warranted problems [he] was going to take the next step toward litigation."  Plaintiff also told Weller on one occasion that he could take the motor home and "shove it up his ass."

Plaintiff listed his motor home for sale in February 2006.  He initially listed the sale price at $94,900, advertised the motor home on www.rvtrader.com, and described the motor home as being in "excellent condition."  Plaintiff later assessed the Kelly Blue Book value of the motor home at $84,900 and reduced the asking price to that amount. Plaintiff stated that he planned to change the description of the motor home from excellent condition to "great condition" or "good condition," but that he has not yet done so.

Plaintiff initiated this action against defendants in February 2007.  Plaintiff's Complaint asserts two claims against defendant Fleetwood.  In Count III, plaintiff alleges that Fleetwood breached the terms of its warranty in violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*  Plaintiff alleges in Count V that he

revoked his acceptance of the motor home under Minnesota Statute § 336.2-608. Plaintiff alleges four claims against defendant Workhorse. Counts I and II of plaintiff's Complaint allege that Workhorse violated Minnesota's Lemon Law under Minnesota Statute § 325F.665. In Count IV, plaintiff alleges that Workhorse breached the terms of its warranty in violation of the MMWA. In Count VI, plaintiff alleges that he revoked his acceptance of the motor home as to defendant Workhorse.[3] Defendants have filed separate motions for summary judgment on all of plaintiff's claims.

## ANALYSIS

### I.    STANDARD OF REVIEW

Summary judgment is appropriate in the absence of any genuine issue of material fact and when the moving party can demonstrate that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit, and a dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A court considering a motion for summary judgment must view the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Zenith Radio Corp.*, 475 U.S. at 587.

---

[3] Plaintiff initially alleged additional violations of Minnesota's Consumer Fraud Act against both Fleetwood and Workhorse. *See* Minn. Stat. §§ 325G.20, 325F.69. Plaintiff has since withdrawn those two claims (Counts VII and VIII).

## II.     MMWA CLAIMS (COUNTS III AND IV)

Plaintiff argues that both Fleetwood and Workhorse breached the terms of their warranties in violation of the Magnuson-Moss Warranty Act.  The MMWA imposes certain minimum requirements on a warrantor of consumer products, including requirements that a warrantor remedy defects in its product within a reasonable time and without charge, and that a consumer be allowed to elect either a refund or replacement of the product after a reasonable number of attempts to remedy the defects.  15 U.S.C. § 2304(a)(1),(4).  Defendants argue, and plaintiff concedes, that the substantive terms of § 2304(a) apply only to full warranties.  *See Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (a limited warranty is "not subject to § 2304 and thus not subject to [the MMWA]'s substantive remedies"); *Bailey v. Monaco Coach Corp.*, 350 F. Supp. 2d 1036, 1042 (N.D. Ga. 2004) ("Only full warranties are required to meet the minimum standards set forth in 15 U.S.C. § 2304.").  It is undisputed that the warranties provided by both Fleetwood and Workhorse are limited.  Thus, the remedial provisions under § 2304(a) are inapplicable here.

Plaintiff argues, however, that § 2310(d) of the MMWA grants the holder of a limited warranty a federal cause of action for breach of warranty under applicable state law.  Defendants respond that plaintiff cannot establish a breach of warranty under Minnesota law.[4]  To establish breach of warranty in Minnesota, the plaintiff must

---

[4] Defendant Fleetwood also argues that § 2310(d) provides only a jurisdictional basis for a consumer to assert state law breach of warranty claims in federal court.  Fleetwood argues that because plaintiff has not pled a state law breach of warranty claim against it, plaintiff's MMWA claim should be dismissed.  The few cases to have addressed this precise issue are not in

(Footnote continued on next page.)

demonstrate the existence of a warranty, a breach, and a causal link between the breach and the alleged harm.  *Peterson v. Bendix Home Sys., Inc.*, 318 N.W.2d 50, 52-53 (Minn. 1982).  Both Fleetwood and Workhorse argue plaintiff has failed to allege sufficient facts that would allow a jury to conclude defendants' conduct constitutes a breach of the relevant warranties.

### A.      Fleetwood's Limited Warranty

Fleetwood contends that, under the terms of its limited warranty, the motor home owner must provide it with notice of the alleged defect to trigger its duty to repair or replace an allegedly defective product.  The Fleetwood Limited Warranty provides, in relevant part:

> **DEALER'S OBLIGATIONS**
> By agreement with the manufacturer, the dealer is obligated to maintain the motor home prior to retail sale, to perform a detailed predelivery inspection and to repair or replace any parts necessary to correct defects in material or workmanship.
>
> **WHEN THE DEALER DOES NOT RESOLVE THE PROBLEM**
> If the dealer is unable or unwilling to resolve a problem which the owner is convinced is covered by the warranty, the owner should contact Fleetwood Owner Relations at the address or telephone number listed on the next page

---

(Footnote continued.)

agreement.  *Compare PCS Prof'l Claim Serv., LLC v. Brambilla's Inc.*, 2007 WL 3313661, at *5 (D. Minn. Nov. 6, 2007) (dismissing MMWA claim because the allegations did not assert a separate state law cause of action), *with Sheehan v. Monaco Coach Corp.*, 2006 WL 208689, at *6 (E.D. Wis. 2006) (allowing MMWA claim under § 2310(d) in the absence of state law claim because nothing in the language of the statute required a plaintiff to plead an accompanying state law claim).  However, the Court need not decide the issue here.  As discussed below, even assuming plaintiff's MMWA claims are properly pled without asserting an explicit state law claim, plaintiff has failed to set forth sufficient facts demonstrating a breach of warranty under Minnesota law.

and provide Fleetwood Owner Relations with a description of the problem and attempts made to resolve it.

**MANUFACTURER'S OBLIGATIONS**
Upon receipt of *notice of a claim*, where the dealer was unable or unwilling to resolve the problem, a Fleetwood Service Center will repair or replace any parts necessary to correct defects in material or workmanship or will take other appropriate action as may be required.

(Sipe Dep. Ex. 2.) (emphasis added).[5]  The Court finds that under the plain language of the warranty, even if the various problems alleged by plaintiff constitute a defect covered under the warranty, Fleetwood must have notice of the defect for its failure to repair or replace to constitute a breach.  Plaintiff has set forth no evidence suggesting that Fleetwood was notified of the alleged motor home defects, including the allegedly defective rear leveling jacks.  Plaintiff conceded in deposition testimony that he never contacted Fleetwood about these problems.  Thus, because Fleetwood's duty to repair or replace under the limited warranty is triggered only upon notice of the defect, Fleetwood's alleged failure to adequately repair or replace the motor home is not a breach of warranty.

Plaintiff raises two additional arguments in support of a breach of warranty claim. Plaintiff first argues that a different section of the Fleetwood warranty, entitled "Owners Obligations," provides that "[i]f a problem occurs which the owner believes is covered by this warranty, the owner shall contact the selling dealer, or Fleetwood Owner Relations,

---

[5] Fleetwood also notes that the notice provision in its warranty reflects the MMWA requirement that a manufacturer must be given a reasonable opportunity to cure any alleged defects.  Under 15 U.S.C. § 2310(e), "[n]o action . . . may be brought under subsection (d) of this section for failure to comply with any obligation under any written or implied warranty or service contract . . . unless the person obligated under the warranty or service contract is afforded a reasonable opportunity to cure such failure to comply."  15 U.S.C. § 2310(e).

giving sufficient information to resolve the matter." (Sipe Dep. Ex. 2.) According to plaintiff, this language suggests that an owner satisfies the terms of the warranty by notifying the dealer of the problem. However, the fact that plaintiff may have been required to first contact the dealer does not eliminate the requirement that Fleetwood be given notice of the defect before its contractual duty to repair or replace is triggered. Because the record shows Fleetwood had no reasonable opportunity to cure the alleged defect, plaintiff's MMWA claim is foreclosed under both the terms of the limited warranty and the plain language of the MMWA itself. *See* 15 U.S.C. § 2310(e).

Plaintiff further contends that Fleetwood is liable for Brambillas's alleged failure to repair the motor home defects because Fleetwood and Brambillas have a principal-agent relationship. Under Minnesota law, an agency relationship exists if there is (1) a manifestation by the principal that an agent act for the principal, and (2) the right of control by the principal over the agent. *Teeman v. Jurek*, 251 N.W.2d 698, 702 (Minn. 1977). Here, however, the Dealer Sales and Service Agreement between Brambillas and Fleetwood provides that "[i]n all matters pertaining to Dealer's business, including warranty and service matters, Dealer is and shall be an independent contractor." (Bradford Decl., Ex. F, at 19.) *See Mikulay v. Home Indem. Co.*, 449 N.W.2d 464, 467 (Minn. Ct. App. 1989) (finding that an agreement identifying representative as an independent contractor supported conclusion that no principal-agent relationship existed). Even setting aside the parties' characterization of their relationship, the Court finds scant evidence in the record suggesting Fleetwood exercised a right of control over Brambillas consistent with a principal-agent relationship. Although the agreement between

Brambillas and Fleetwood requires Brambillas to provide services covered under warranty to all warranty holders, the record shows that Fleetwood had little or no direct control over or input into the day-to-day services, inspections, and repairs provided by Brambillas to its customers.  *See, e.g.*, *Ins. Co. of N. Am. v. Am. Marine Holdings, Inc.*, 2005 WL 3158049, at *8 (M.D. Fla. 2005) (finding that warranty repair work provided by a dealer pursuant to service agreement did not demonstrate level of control necessary to find an agency relationship).  For these reasons, the Court concludes that Brambillas acted as an independent contractor, and that Fleetwood is not be liable for Brambillas's alleged failure to adequately repair the motor home defects.

In sum, the Court finds insufficient evidence supporting plaintiff's contention that Fleetwood breached the term of its limited warranty.  Accordingly, the Court grants Fleetwood's motion for summary judgment as to Count III of plaintiff's Complaint.

**B.     Workhorse's Limited Warranty**

Workhorse similarly argues that plaintiff's MMWA claim fails because plaintiff cannot show that Workhorse breached its warranty under Minnesota law.  As noted above, a breach of warranty claim must demonstrate the existence of a warranty, a breach of that warranty, and a causal link between the breach and the alleged harm.  *See Bendix Home Sys., Inc.*, 318 N.W.2d at 52-53.  Workhorse's warranty provides that "[Workhorse] will provide for repairs to the chassis during the warranty period."  (Stull Decl., Ex. B, at 10.)  "A repair or replace clause does not fail of its essential purpose so long as repairs are made each time a defect arises."  *Transp. Corp. of Am. v. Int'l Bus. Machs. Corp.*, 30 F.3d 953, 959 (8th Cir. 1994).  Thus, to establish a breach of warranty

plaintiff must demonstrate that Workhorse cannot or will not repair or replace the allegedly defective parts. *See Christian v. Sony Corp. of Am.*, 152 F. Supp. 2d 1184, 1189 (D. Minn. 2001). "If the seller refuses to repair or replace within a reasonable time, the buyer is deprived of the exclusive remedy." *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 75 (Minn. 1981).

With respect to the engine stalling problem, plaintiff brought the motor home to Brambillas in October 2004 after the first stalling episode. Brambillas inspected the engine and performed diagnostic tests, which revealed no problems with the engine. Because there were no problems identified, Brambillas performed no repairs. The engine stalled on two more occasions in May and June 2005. Each time, plaintiff brought the motor home to Brambillas for service, and each time Brambillas inspected the engine pursuant to the warranty and found no problems with the engine. Because Brambillas did not identify problems with the engine, it did not perform any repairs. Plaintiff concedes that following the June 2005 incident, he never again experienced the engine stalling in the motor home.

Even viewing these facts in a light most favorable to plaintiff, the Court finds insufficient evidence in the record to show that Workhorse, through its authorized dealer Brambillas, cannot or will not repair the allegedly defective engine. The decision not to repair or replace the engine was based on inspections and diagnostic tests showing no engine problems after each of the three reported incidents. Had the engine stalling condition persisted over time, Workhorse would likely have had a duty to repair or replace despite the negative diagnostic tests. *See Farley v. Country Coach, Inc.*, 2006

WL 3299464, at *5 (E.D. Mich. Nov. 14, 2006) (duty to repair or replace triggered where motor home underwent 52 days of repairs for repeated complaints within a 12-month period, and plaintiff continued to experience the problems despite the repair attempts). Here, however, the fact that the engine problem ceased after June 2005 suggests that the three diagnostic tests were accurate, and that there was indeed no defective engine condition in need of repair. Accordingly, the Court finds plaintiff has failed to set forth sufficient evidence showing that Workhorse cannot or will not repair the engine in violation of the limited warranty.

With respect to the transmission fluid leak, Workhorse contends there is no need for repair or replacement because there is no evidence that the transmission leak is the result of a defect or nonconformity in the motor home chassis. Workhorse points to the declaration of Bill Hanson, who examined the transmission and concluded that the transmission fluid leak was not caused by a defective transmission but rather by a "cold leak" that occurs when a rubber gasket shrinks in cold weather and allows fluid to escape. Plaintiff has failed to point to any evidence suggesting that the fluid leak is indeed the result of a defect or nonconformity in the motor home transmission. As such, the Court finds that because plaintiff has not established that repairs to the transmission are necessary, a jury could not reasonably conclude that Workhorse's alleged refusal to repair the condition constitutes a breach of the repair or replace clause in the Workhorse warranty. For these reasons, the Court grants Workhorse's motion for summary judgment on Count IV of plaintiff's Complaint.

## III.    REVOCATION OF ACCEPTANCE CLAIMS (COUNTS V AND VI)

Plaintiff next argues that he effectively revoked his acceptance of the motor home under Minnesota Statute § 336.2-608.  The right to revoke acceptance of commercial goods under Minnesota law allows a buyer to revoke if a nonconformity "substantially impairs" the value of the goods to the buyer.  Minn. Stat. § 336.2-608(1).  However, revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the nonconformity, and before any substantial change in the condition of the goods.  Minn. Stat. § 336.2-608(2).  Further, revocation is not effective "until the buyer notifies the seller of it."  *Id.*  The notice of revocation must be unequivocal.  *Highway Sales, Inc. v. Blue Bird Corp.*, 504 F. Supp. 2d 630, 643 (D. Minn. 2007).

The Court finds little evidence in the record to support plaintiff's contention that his revocation was unequivocal.  Plaintiff points to two instances in which he purports to have orally revoked his acceptance of the motor home: 1) his statement to a Brambillas service manager that he could take the motor home and "shove it up his ass," and 2) his statement to the manager that he was unhappy with the motor home and if they "did not resolve the warranted problems [he] was going to take the next step toward litigation." These statements fall short of apprising either Workhorse or Fleetwood of plaintiff's unequivocal desire to revoke his contract and obtain either a refund or a new motor home. Indeed, plaintiff's second statement merely conditions the threat of litigation on Brambillas's future ability to repair the problems under warranty.  *See L.S. Heath & Son, Inc. v. AT&T Inf. Sys., Inc.*, 9 F.3d 561, 568 (7th Cir. 1993) (finding that a letter that

makes revocation conditional upon a party's failure to effect a cure does not establish unequivocal revocation).   As such, the Court finds these statements insufficient to constitute unequivocal revocation of acceptance of the motor home.

Further, there is little evidence in the record suggesting that the alleged defects substantially impair the value of the motor home.   Many of the defects are relatively minor or aesthetic in nature.   *See Durfee v. Rod Baxter Imports, Inc.*, 262 N.W.2d 349, 354 (Minn. 1977) ("Minor defects not substantially interfering with the automobile's operation or with the comfort and security it affords passengers do not constitute grounds for revocation.").   With respect to alleged problems with the rear leveling jacks and engine, the Court notes that plaintiff has taken his motor home on numerous recreational trips since he allegedly revoked acceptance, suggesting the defects have not substantially interfered with plaintiff's use of the motor home.   *See id.*; *see also In re Simitar Entertainment, Inc.*, 275 B.R. 331, 347 (D. Minn. 2002) (stating that the defect "must substantially impair the value of the goods to the buyer, in the sense of substantially interfering with their use or operation or with the purpose for which they are purchased"). In addition, plaintiff has logged considerable miles on the motor home and has installed a new breaking system, changes that likely preclude a valid revocation.   *See* Minn. Stat. § 336.2-608 (revocation only valid "before any substantial change in condition of the goods which is not caused by their own defects").   Finally, despite these alleged defects, plaintiff initially listed his motor home for sale at $94,900, describing the motor home as being "in excellent condition."   In sum, even viewing these facts in a light most favorable

to plaintiff, a jury could not reasonably conclude that the alleged defects substantially impair the value of the value of the motor home.

For these reasons, the Court finds that plaintiff has failed to demonstrate a genuine issue of material fact with respect to whether he validly revoked acceptance of the motor home.   The Court therefore grants Fleetwood's motion for summary judgment on Count V of plaintiff's Complaint, and grants Workhorse's motion for summary judgment on Count VI.

## IV.    LEMON LAW CLAIMS (COUNTS I AND II)

Plaintiff alleges that Workhorse violated Minnesota's Lemon Law by failing to repair, refund, or replace the motor home engine and transmission.  *See* Minn. Stat. § 325F.665.  Under § 325F.665, subd. 2, a manufacturer has a duty to repair a vehicle's nonconformity if the nonconformity is reported during the term of the applicable warranty, or within two years of the date of original delivery of the new motor vehicle, whichever is earlier.  If the manufacturer is unable to repair or correct the defect, it has a duty to refund or replace the motor vehicle if the plaintiff can show: (1) the manufacturer did not conform the vehicle to the applicable warranty; (2) the defect substantially impairs the use and value of the vehicle; and (3) the defect continues to exist after a reasonable number of attempts to repair the defect.

Workhorse first argues that plaintiff failed to report the alleged transmission fluid leak within the time period set forth in § 325F.665, subd. 2.  The Court agrees.  Plaintiff received a three-year limited warranty from Workhorse when he purchased the motor home.  Thus, plaintiff must have reported the nonconformity within two years of the date

of original delivery of the new motor vehicle.  *See* Minn. Stat. § 325F.665, subd. 2.  It is undisputed that plaintiff took delivery of the motor home in October 2004, and that he reported the transmission fluid leak to Brambillas in January 2007, more than two years after the delivery of the motor home.  As such, the Court finds that Workhorse has no statutory duty to repair the transmission.  Moreover, as discussed above, plaintiff has set forth no evidence showing that the leak is caused by a nonconformity in the motor home transmission.  As such, plaintiff's Lemon Law claim fails with respect to the alleged transmission leak.

As to the alleged engine defect, Workhorse argues plaintiff has not shown that it failed to conform the motor home engine to the terms of the warranty.  The Workhorse warranty requires Workhorse to "provide for repairs to the chassis during the warranty period." (Stull Decl., Ex. B, at 10.)  Here, Brambillas service technicians ran diagnostic tests of the engine after each of plaintiff's three reported incidents, which revealed no problems with the engine.  Because there were no apparent problems or defects, Brambillas elected not to repair the engine.  Plaintiff concedes that the engine has not stalled since the third incident in June 2005, and has come forth with no additional evidence suggesting that the engine is currently defective.  The Court finds that, even viewing the facts in a light most favorable to plaintiff, a jury could not reasonably conclude that there is a nonconformity requiring Workhorse to repair, replace, or refund the motor home engine.  Further, for the reasons discussed above, the Court is not persuaded that the alleged engine defect has substantially impaired the value of plaintiff's motor home.  Instead, the evidence shows plaintiff has continued to use the motor home

despite the apparent defect – logging at least 10,000 miles since the last stalling incident – and has listed the motor home for sale at market value and in "excellent condition." Thus, even if the record suggested there was a defect requiring repair, Workhorse's alleged failure to properly repair the engine would not trigger a duty to replace or refund the vehicle under the Minnesota Lemon Law.

In sum, the Court finds insufficient evidence to create a genuine issue of material fact on plaintiff's Lemon Law claims. Accordingly, the Court grants Workhorse's motion for summary judgment on Counts I and II of plaintiff's Complaint.


## ORDER

Based on the foregoing, all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant Fleetwood's Motion for Summary Judgment [Docket No. 13] is **GRANTED**.

2.    Defendant Workhorse's Motion for Summary Judgment [Docket No. 20] is **GRANTED**.

3.    Plaintiff's Complaint is **DISMISSED with prejudice**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


DATED:  August 29, 2008                              _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                                  JOHN R. TUNHEIM
                                                         United States District Judge